Filed 4/28/21  In re S.R. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.R. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. T.C., Defendant and Appellant. | E076177 <br><br> (Super.Ct.Nos. J269980 & J269981) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge. Reversed with directions.

Christy C. Peterson, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel and Richard W. Van Frank, Deputy County Counsel for Plaintiff and Respondent.

1

Mother appeals the juvenile court's order terminating her parental rights to her children, Isaiah R. and Summer R., who were four years old and one year old when removed from her custody in 2017. Her only challenge on appeal is that the court found the Indian Child Welfare Act (ICWA), 25 U.S.C. 1901 et seq., didn't apply to the children despite a report by both maternal grandparents revealing that their great-grandmother is a member of the Yaqui of Arizona.

Mother and father were present at the initial detention hearing and both denied having Indian ancestry.[1] The trial judge found ICWA didn't apply. Both parents failed to reunify, and the maternal grandparents sought custody. At the Welfare and Institutions Code section 366 permanency planning review hearing, the grandparents completed forms where they indicated the children have Indian ancestry. The grandfather specified their great-grandmother was a member of the Yaqui tribe of Arizona. San Bernardino County Children and Family Services didn't inquire further. On November 24, 2020, the juvenile court took judicial notice of all prior findings, including the initial finding that ICWA didn't apply, and then terminated mother's parental rights.

Mother seeks reversal and asks that we remand the case with directions that the juvenile court order the department to investigate Isaiah's and Summer's status as Indian children. We agree the grandparents' disclosure triggered a duty for the Children and Family Services department to inquire further and therefore conditionally reverse the order terminating parental rights and remand for further proceedings.

---

[1] The court terminated father's rights as well, but he's not a party to the appeal.

# I

# FACTS

A. *Initiation of the Dependency*

On March 9, 2017, San Bernardino County Children and Family Services (the department) received an immediate response referral alleging Isaiah, who is autistic, was found unclothed and unsupervised in the street and that mother was abusing methamphetamine and heroin and therefore not providing adequate care. The referral also alleged the father was in the hospital incapacitated, and the home and the child were filthy.

A social worker and law enforcement officer contacted mother, father, Isaiah, and his younger sister, Summer, at the family home. The home was unsanitary and dangerous, and both children were naked and dirty. Mother told the social worker she had been diagnosed with paranoid schizophrenia and was having a hard time because her medications weren't helping. She admitted using methamphetamine two days earlier. They also found evidence of a fight between the parents. Law enforcement arrested both parents and the department detained the children.

On March 13, 2017, the department filed a petition alleging both parents had failed to properly supervise the children and allowed them to live in an unsanitary and dangerous home. The petition also alleged mother's mental illness impaired her ability to provide care, father had failed to protect the children from her mental illness, and both parents had endangered the children by abusing narcotics and engaging in domestic

3

violence in front of them. (Welf. & Inst. Code, § 300, subds. (b), (c), & (j), unlabeled statutory citations refer to this code.) Finally, the petition alleged both parents had been unable to arrange for the care of the children as a result of their arrests. (§ 300, subd. (g).)

B. *Dependency Proceedings and the Children's Indian Ancestry*

The juvenile court held a detention hearing on March 14, 2017. Mother and father, who were still in custody, attended the hearing with appointed counsel. Both parents denied knowing of any Indian ancestry and submitted completed ICWA-020 forms to that effect. The court found a prima facie case was established that the children came within the provisions of section 300 and for detention out of the home, ordered the children detained from mother and father, and set the matter for a jurisdiction and disposition hearing.

Mother and father were present by video at the April 4, 2017 jurisdiction and disposition hearing. The juvenile court found father to be the presumed father and found true all the allegations in the petition, except for the allegations under section 300, subdivision (g) relating to the parents' incarceration. The court found ICWA did not apply and declared the children dependents of the juvenile court. The court removed the children from the parents' custody and ordered reunification services and supervised visits for them both.

Over the course of the next several months, both parents made substantial progress on reunification, including having the children returned to their home for unsupervised and overnight visits. However, by November 2017, both had relapsed, and the department

4

terminated unsupervised visits. On April 4, 2018, the juvenile court terminated parents' reunification services and changed the plan for the children to placement in a foster home with a specific goal of placement with a relative. The court authorized the department to initiate a request under the Interstate Compact for the Placement of Children (ICPC) to place the children with a relative in Florida.

At the section 366 permanency planning review hearing on September 28, 2018, the department reported Isaiah's maternal grandmother, who lived in Colorado, was interested in placement and adoption. The juvenile court authorized the department to pursue out of state placement and authorized the department to allow short term visits with the grandmother.

At the next permanency planning review hearing on March 22, 2019, the department reported grandmother was still very interested in adopting the children. She came to California almost every month to visit, and on January 22, 2019, the department approved both grandparents for unsupervised visits. Grandmother was developing a bond with the children, who recognized her as their grandmother. The department recommended the children transition to grandmother's home once the interstate compact request was approved.

Both maternal grandparents were present at the March 22, 2019 hearing, and they each completed a Family Find and ICWA Inquiry form. The grandmother indicated she didn't know if she had Indian ancestry but checked boxes to say the children had other unidentified relatives with Indian ancestry and had family members who had lived on

5

federal trust land, on a reservation, or on a Rancheria or an allotment. The grandfather checked boxes indicating he has ancestry tracing to the Yaqui tribe of Arizona, and the children had other relatives with Indian ancestry who had lived on federal trust land, on a reservation, on a Rancheria or an allotment. The grandfather identified the children's great-grandmother, Virginia G., as a Yaqui ancestor. Both grandparents listed Virginia G. as living with them. The juvenile court didn't ask about the grandparents' claimed Indian heritage at the hearing.

The court authorized liberal Skype and telephone contact for the grandparents as well as unsupervised visits in California. The court also authorized the department to allow visits with the grandparents in Colorado during school breaks and holidays. Before the next hearing on September 20, 2019, the department reported the ICPC request had been approved on July 15, 2019, the children had been placed with the grandparents in Colorado on July 30, 2019, and they had enrolled in school and were adjusting well. The department reported the placement was appropriate, the children were building family relationships, and the grandparents were pursuing adoption.

C. *Permanent Placement Review and Termination of Parental Rights*

After several continuances due to the COVID-19 pandemic, the juvenile court held a permanent placement review hearing on June 19, 2020. Neither parent was present.[2] The department reported the children remained with the grandparents in their home in

---

[2] Mother filed a section 388 petition requesting further reunification services, which the trial court denied. Mother doesn't challenge that ruling on appeal.

Colorado and recommended the court set the matter for a section 366.26 hearing for adoption.

The court held the section 366.26 hearing on November 24, 2020. Mother attended by audio connection, but father did not. County Counsel admitted into evidence the department's section 366.26 report and their additional information report, and mother testified. In the section 366.26 report, the department noted the court had found at the April 4, 2017 jurisdiction and disposition hearing that ICWA doesn't apply. The court found by clear and convincing evidence that the children were likely to be adopted and took judicial notice of all prior findings, orders and judgments. The court terminated both parents' rights and ordered adoption as the children's permanent plan.

Mother filed a notice of appeal the same day which challenges the termination orders.

**II**

**ANALYSIS**

Mother argues the trial judge erred by finding ICWA didn't apply despite the grandparents' asserting the children had Indian ancestry. She seeks reversal of the termination orders and remand with directions that the trial judge order the department to undertake further investigation because the grandparents' revelations provided reason to believe Isaiah and Summer are Indian children. We review a juvenile court's finding that ICWA does not apply for substantial evidence. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885 (*Austin J.*).)

7

Here, the issue is complicated by the fact the parents both initially represented Isaiah did not have Indian ancestry. The trial court's finding the ICWA didn't apply to Isaiah on the basis of those representations was plainly supported at the time it made the finding in April 2017. However, the trial court adopted the same finding in November 2020, after the grandparents had provided information indicating the children have Indian ancestry through their great-grandmother—who they said was an Arizona Yaqui. The question we face is whether this information undermines the later trial court finding that ICWA doesn't apply.

"ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family." (*Austin J.*, *supra*, 47 Cal.App.5th at pp. 881-882; see also 25 U.S.C. § 1902.)

"When ICWA applies, a state court may not, for example, make a foster care placement of an Indian child or terminate parental rights to an Indian child unless the court is satisfied 'that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.'" (*Austin J.*, *supra*, 47 Cal.App.5th at p. 882, quoting 25 U.S.C. § 1912(d).) Before placing an Indian child in foster care, the court must also make "a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the

parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (*Austin J.*, at p. 882.) ICWA assures that the "Indian child, the parent, and the Indian child's tribe have the right to intervene in any 'proceeding for the foster care placement of, or termination of parental rights to, an Indian child' [citation], and can petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA." (*Ibid.*)

Central to ICWA is the determination that a child in the dependency system is an Indian child. The statute defines an "Indian child" as an unmarried person under 18 years of age who is either "(a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4) & (8); see Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definitions].) "Being an 'Indian child' is thus not necessarily determined by the child's race, ancestry, or 'blood quantum,' but depends rather 'on the child's political affiliation with a federally recognized Indian Tribe.'" (*Austin J.*, *supra*, 47 Cal.App.5th at p. 882.)

"Under California law, the court and county child welfare department 'have an affirmative and continuing duty to inquire whether a child,' who is the subject of a juvenile dependency petition, 'is or may be an Indian child.'" (*Austin J.*, *supra*, 47 Cal.App.5th at p. 883, quoting § 224.2, subd. (a).) "The child welfare department's initial duty of inquiry includes 'asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and

9

where the child, the parents, or Indian custodian is domiciled.' (§ 224.2, subd. (b).) The juvenile court must ask the participants in a dependency proceeding upon each party's first appearance 'whether the participant knows or has reason to know that the child is an Indian child' (§ 224.2, subd. (c)), and '[o]rder the parent . . . to complete Parental Notification of Indian Status ([Cal. Judicial Council] form ICWA-020).'" (*Austin J.*, at p. 883.)

"Notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter." (*In re T.G.* (2020) 58 Cal.App.5th 275, 288, review den. Mar. 24, 2021 (*T.G.*).) The department must provide notice to the parent or Indian custodian and the Indian child's tribe in proceedings seeking foster care placement or termination of parental rights "where the court *knows or has reason to know* that an Indian child is involved." (25 U.S.C. § 1912(a), italics added.) California law has the same requirement. (Welf. & Inst. Code, § 224.3, subds. (a), (b); see also Cal. Rules of Court, rule 5.481(c)(1).)

Under section 224.2, subdivision (d), "There is reason to know a child involved in a proceeding is an Indian child under any of the following circumstances: [¶] (1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child. [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an

10

Alaska Native village. [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child. [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child. [¶] (5) The court is informed that the child is or has been a ward of a tribal court. [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe."

It isn't easy to track tribal affiliations and those connections are easily lost. "Oral transmission of relevant information from generation to generation and the vagaries of translating from Indian languages to English combine to create the very real possibility that a parent's or other relative's identification of the family's tribal affiliation is not accurate. Accordingly, just as proper notice to Indian tribes is central to effectuating ICWA's purpose, an adequate investigation of a family member's belief a child may have Indian ancestry is essential to ensuring a tribe entitled to ICWA notice will receive it." (*T.G.*, *supra*, 58 Cal.App.5th at p. 289.) This case is a stark example of that dynamic, because the children's parents apparently had no idea of their family's connection to the Yaqui tribe of Arizona, even though the children's great-grandmother was a member and still lived with the grandparents in Colorado.

To advance tribes' interest in receiving notice and their ability to intervene in appropriate cases, the Legislature has imposed duties on the court and county welfare departments to investigate potential tribal relations. Courts and county welfare

11

departments "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child. The duty to inquire begins with the initial contact." (§ 224.2, subd. (a).) The statute obligates the court and child protective agencies to ask all relevant involved individuals, including the person who reported the abuse or neglect, "whether the child is, or may be, an Indian child." (*Id.*, subds. (a) & (b).) And the court is required to ask of each at the first appearance in court "whether the participant knows or has reason to know that the child is an Indian child" and to "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (*Id.*, subd. (c).)

In addition to the initial duty of inquiry, which applies from the outset of the proceedings, the Legislature has imposed a duty of further inquiry if information becomes available suggesting a child may have an affiliation with a tribe, even if the information isn't strong enough to trigger the notice requirement. "If the court, social worker, or probation officer has *reason to believe* that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is *reason to know* that the child is an Indian child, the court, social worker, or probation officer shall make further inquiry regarding the possible Indian status of the child."[3] (§ 224.2, subd. (e), italics added.) California Rules of Court, rule 5.481(a)(4) also requires further inquiry

---

[3] The Legislature added this requirement effective January 1, 2020, so it was in effect before the § 366.26 hearing in this case.

12

if a social worker or investigator "knows or has reason to know *or believe* that an Indian child is *or may be* involved." (Italics added.)

When there is reason to believe an Indian child may be involved in a dependency, the required inquiry is reasonably substantial. It must include interviewing the parents and extended family members, contacting the Bureau of Indian Affairs and State Department of Social Services, and "[c]ontacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(A)-(B).) The informal contact with the tribe must "at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices . . . [and] include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (*Id.*, subd. (e)(2)(C).)

The Legislature later amended the statute to clarify when further inquiry is required. "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e)(1).) Thus, information that is far

13

less conclusive than what would trigger formal notice may trigger the obligation to conduct further inquiry, including informal notice to any relevant tribes.

In this case, both mother and father filed ICWA-020 forms at the time of the detention hearing declaring they didn't know of any Indian ancestry on either side of the family. These preliminary responses didn't provide reason to know *or* reason to believe an Indian child might be involved in the dependency. However, circumstances changed substantially after the maternal grandparents became involved in the case. Both grandparents were present for the permanency planning review hearing on March 22, 2019 and submitted forms asserting Isaiah and Summer had a very close connection to a specific Indian tribe. The maternal grandfather said his mother was a member of the Yaqui tribe of Arizona. Moreover, his form indicated she was still alive and living with the maternal grandparents in Colorado. This connection is specific enough to constitute "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) As a result, the grandparents' revelation about Isaiah's maternal great-grandmother gave the department reason to believe Isaiah and Summer may be Indian children and triggered a duty for the department to inquire further, including by contacting the Yaqui tribe of Arizona.

The department relies on *Austin J.* to argue the new information didn't trigger the need for further inquiry. *Austin J.* concerned ICWA compliance in connection with jurisdiction and disposition hearings held in July 2019 at which the juvenile court held ICWA did not apply though relatives had said their family may have Cherokee ancestry.

14

The Court of Appeal observed that, after recent amendments, "[t]ribal ancestry is not among the criteria for having a reason to know the child is an Indian child" under ICWA or California law and held the mother's statement she may have Indian ancestry and had been told her mother had Cherokee ancestry and similar statements by the great aunt didn't establish a reason to believe the children were Indian children as defined in ICWA. (*Austin J.*, *supra*, 47 Cal.App.5th at p. 885.) "At most, they suggest a mere possibility of Indian ancestry. Indian ancestry, heritage, or blood quantum, however, is not the test; being an Indian child requires that the child be either a member of a tribe or a biological child of a member . . . . Indian ancestry, without more, does not provide a reason to believe that a child is a member of a tribe or is the biological child of a member." (*Id*. at pp. 888-889.)

We disagree with *Austin J.*'s narrow reading of the kind of information sufficient to trigger the duty of further inquiry. Instead we agree with *T.G.*, which emphasized that though "'Indian child' is defined in terms of tribal membership, not ancestry . . . the question of membership is determined by the tribes, not the courts or child protective agencies." (*T.G.*, *supra*, 58 Cal.App.5th at p. 294, citing *Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 65-66, fn. 21.) Indeed the California statutory scheme provides that "[a] determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe . . . shall be conclusive. Information that the child is not enrolled, or is not eligible for enrollment in, the tribe is not determinative of the child's

15

membership status unless the tribe also confirms in writing that enrollment is a prerequisite for membership under tribal law or custom." (§ 224.2, subd. (h).)

As the *T.G.* court emphasized, the determination of membership and eligibility "often requires providing a tribe with extensive biographical data (that is, information about ancestors and ancestry), which is why section 224.3, subdivision (a)(5)(C), prescribes in detail the information about parents, grandparents and great-grandparents that must be included in an ICWA notice." (*T.G.*, *supra*, 58 Cal.App.5th at p. 294.) Thus, the statutory scheme plainly treats evidence of Indian ancestry as relevant to the tribe's determination about the child's status. We therefore conclude that the very specific evidence of Indian ancestry present in this case does provide reason to believe the children are Indian children, even if that evidence does not directly establish the children or their parents are members or eligible for membership.

The recent amendment to section 224.2, subdivision (e) confirms the "reason to believe" standard requiring further inquiry should be broadly interpreted. As we noted above, the Legislature amended the statute to specify "[t]here is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information *suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe*." (Italics added.) Those plain terms suggest a loose fit between the information that requires further inquiry and the specific kinds of information that constitute "reason to know" a child in dependency proceedings is an Indian child as defined by statute. The next sentence in the

16

statute eliminates all doubt: "Information suggesting membership or eligibility for membership includes, but *is not limited to*, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e), italics added.) That new provision forecloses the narrow interpretation of what constitutes reason to believe advanced by the court in *Austin J.*

The bottom line in this case is that further inquiry is required. On remand, the juvenile court must direct the department to make a meaningful inquiry regarding the children's Indian ancestry, including interviews with extended family members and contact with the Yaqui tribe of Arizona. If that information establishes a reason to know the children are Indian children, the department must provide formal notice to any tribe identified or to the Bureau of Indian Affairs. After these further inquiries, the department shall notify the court of its actions and file certified mail return receipts for any ICWA notice they sent, as well as any responses. The court must then determine, on the record, whether the ICWA inquiry and notice requirements have been satisfied and whether Isaiah and Summer are Indian children. If the court finds they are, it must conduct new section 366.26 hearings in compliance with ICWA and related California law. If not, the court may reinstate its original section 366.26 orders.

# III

## DISPOSITION

We conditionally reverse the section 366.26 orders and remand to the juvenile court to direct the department to comply with the inquiry and notice provisions of ICWA and related California law and for further proceedings consistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH_____
                                                                                J.

We concur:


MILLER_____
          Acting P. J.


RAPHAEL_____
                    J.